Select, LLC v. Samsung, 2022, 1100, 1101, 1272, and 1273. Mr. Kaplan. Good morning, Your Honors. May it please the Court. Please proceed. Thank you. The four final written decisions in this appeal all share a common legal problem, which is that there was a finding of obviousness based on what a person's skill in the art could have done instead of what a person's skill in the art would have done. The Board took a mix-and-match approach to the different references, selected particular aspects of the references, and then combined them without accounting for the context of the references, the full disclosure of the references, and what was happening in the field at the time. One example, which I will be talking about, and it's in our briefs, three of the IPRs, the primary reference, the Wakabayashi reference, had three words, solid state imager, and that was enough for the Board. Throughout all the proceedings, the Board repeatedly came back to that language, the Wakabayashi reference, and effectively discounted anything else in Wakabayashi, any arguments that were made about what Wakabayashi would mean to a person's skill in the art, how it could be combined, by focusing on that solid state imager language. We submit that is an example, and what happened there was a could-have approach was taken. The case law from this court is clear. The could-have is not standard for obviousness. It is the would-have, what a person would have done. Is it your argument that the error is the use of the words could-have? Is it any time that the PTAB uses the words could-have that that has a specific meaning that turns their construction on its head? No, Your Honor. It's not the particular use of the word could-have. In a few instances, there were examples where the Board did say could-have. I know the other, but it is more than that. It is where, for example, on multiple occasions, and I have sites to the appendix. It's in our brief, but in the appendix of 59 and 40, there are comments about if the use of the phrase solid state imager alone is enough. If there are additional reasons for or against what the reference meant, it didn't matter because that was enough. In fact, they treated that language, solid state imager, as being a broader disclosure than just what was shown in the particular reference. But we have other examples in the brief. They said, for example, even if Wakabashi was a CCD device, and I want to kind of backfill a little bit of this, but even if it was this charge-coupled device, it could have suggested it was that but also something else. Then they went on after that to use would-have. Would have been motivated. For example, on 37. So throughout... They didn't stop and just say it could have taught two things. They say it would have been motivated to combine that teaching with Ackland. Your Honor, I think throughout... They repeatedly used that same analysis of could-have. They went back and they said solid state imager is enough even if it was CCD. But there was never a description, and this goes to your question, Your Honor, as well. It's not just the use of the term could-have. It was the fact that Wakabayashi had a particular... It said more than just solid state imager in those three words. It showed additional disclosure. It showed multiple off-chip circuits. It had additional functionality. And all of that was really taken to the wayside. And there was an analysis by the board as to what the reference would have meant to a person skilled in the art. It was that the fact that it had solid state imager, that was enough. And that, we submit, is an improper use of the could-have standard. But I'm right, all right, that they didn't stop at saying could-have taught two things. It went on to say it would-have motivated. It's not a situation where they said could-have motivated somebody. They said would-have motivated. Your Honor, even when they said would-have motivated in that context, and I can look at that particular language, the rationality of what's in their reasoning, and they say this throughout, and we say this throughout the brief, and the board said it, it always came back to that single phrase, solid state imager. That was always enough. And, in fact, they said on Appendix 50-3 in one of the decisions, solid state imager is all the motivation that is needed. And they treated that as an express disclosure. So it isn't just a question of using the words could-have? Correct, Your Honor. It is much more than that. It doesn't help us to pick a word and say that decided the case and, therefore, we win. It's correct, Your Honor. And I just want to briefly give just a little background. So the technology involved here are these imager devices, and in particular for the patents in suit or the patents involved in these IPRs, they involve these active pixel cell CMOS imagers, a particular type of imaging device. It's made a particular way. And what is claimed here is a deconstructive form of that active pixel sensor CMOS imager. And there are other technologies that were involved or that existed for imagers at the time, in particular these charge-coupled devices. The charge-coupled devices and the CMOS imagers have very different principles of operation. That's never been disputed that they operate differently. And the Wakabayashi reference, for example, or as an example, is a charge-coupled device. It has the hallmarks of that. And there are certain characteristics of a charge-coupled device, and there is testimony about that in the record. No one disputes that Wakabayashi shows multiple off-circuit components. It has a rotatable head, so it has circuitry to change the image when it comes out or to reorient the image, and that's because it uses this charge-coupled device. Because a hallmark of a charge-coupled device is that it has what's called a destructive readout. So in order to see any image, you have to empty what is in the pixels. These patents are expired, aren't they? They are, Your Honor. Is there any other litigation going on with respect to them? There is a pending lawsuit in Colorado that's currently stayed. But there's a big – just going back to what I was saying, the charge-coupled devices and these CMOS imagers, these active pixels CMOS imagers, are different technologies. They are not interchangeable. They have different principles of operation. And so when the board says solid-state imager is enough, it treats all types of solid-state imagers, of which CCD devices are one, CMOS imagers are one, active pixel CMOS imagers are one, treats them as interchangeable, and then it mixes and modifies a CCD device, which is Wakabayashi, with a CMOS reference, which is Ackland. And that's, again, why we submit this as a could-have example, because it doesn't account for how a person's skill in the art would look at the totality of what Wakabayashi says and describes, not just solid-state imager but all the rest of it, and then also account for what the Ackland reference shows. The Ackland reference is describing an active pixel CMOS imager. This is the technology that's described in the patents. It's described in the patents as something that's improved upon, or is improved upon by separating out some of the functionality in these active pixel sensor CMOS imagers. Is a CMOS a solid-state imager? It is a type of one. Yes, it is. And Wakabayashi, it speaks as to a solid-state imager. It's a solid-state imager as well. It says... It's a typo. It states it's a solid-state imager. Correct, Your Honor. So if they're both solid-state imagers, why isn't it enough just simply to say, here we have two solid-state imagers with some variation in them, and the combination because of that, just because of that, the motivation to combine rises from that. Because of what a person's going to have understood at the time and what the record evidence showed. For example, the active pixel or APS CMOS imager, which is what's involved here in Ackland, was designed to be an on-chip integrated device. Everything was on a chip. Wakabayashi, it shows multiple chips. So the combination of Wakabayashi and Ackland. The board found that Wakabayashi taught CMOS chip and off-chip processing, right? They did not find that, Your Honor. I don't think that the board found that Wakabayashi taught that. I thought it did. The board's position, as I understand it, is that Wakabayashi is a solid-state imager, and they really did not address all of the other infrastructure and hardware in Wakabayashi, and said that the solid-state imager language was enough to encompass everything, and that is the could problem, because what a person on the art would do is, why would a person on the art take an APS CMOS imager, which is designed to be an on-chip integrated device, and put it into a Wakabayashi device with multiple chips to break it up and put it in multiple boards? It would be less efficient, more expensive. It would get you the worst of both worlds, in that the CCD multi-chip devices were bigger, more expensive to manufacture, required more power to run. The on-chip integrated device could be integrated with all the other electronics. It was smaller. It was more adaptable. And so to combine them is not what a person on the art would do, because there was no cost savings. The record shows that there was no cost savings. The board found there was no cost savings from doing it. And it gets you the worst, because at the time, again in 1997, CCD imagers were considered to have higher quality images. CMOS at the time had lower quality. So another reason that a person on the art would not be motivated to make that combination. That's an argument that's fine when addressed to the board, but here we're dealing with substantial evidence, and they found that there were advantages other than cost, right? Well, again, your Honor, I respectfully submit that what the board found is that Wakabayashi said solid-state imager, and that was enough to justify treating Wakabayashi as effectively a blank slate. Yeah, but this board finds that there were advantages other than cost for making the combination. Well, there were advantages of APS CMOS imagers, because they were smaller and integrated, and they required less power, but those are more differences and reasons that they wouldn't be combined. And the point is there was also a lot of record evidence describing what these active pixel APS sensors were and how they operated. Dr. Fossum, Dr. Acklin both wrote on it. We have a number of sites in the record. I thought the board had found a number of reasons why a person's skill nor would combine here. Combination of familiar elements, the benefit of reducing noise levels, the teachers are directed to well-known objectives, such as the arranging of sensor circuitry, minimizing the size, very important in this, minimizing the size and the cost of the product. Your Honor, again, I submit that was what could be done. There was nothing in Wakabayashi, going back to our core problem with the decision, it's not what a person would have done looking at Wakabayashi. You said that those advantages that Judge Raymond just pointed out to you would have motivated somebody to make the combination. Well. Yes, no? We submit that that would not have motivated someone to do it at the time. But the board found that it would have motivated somebody, right? I'm sorry. The board found that those advantages would have motivated somebody to make the combination. In addition to, I think the majority of their analysis is directed to what could be done. And my issue with that combination and what you're talking about. Answer my question. Did not the board find that those advantages would have motivated somebody to make the combination? I'd look at that. I accept, yes. If the board had parts where they said some of those features would motivate a person to make the combination, I don't think that. That does not undermine what the board did throughout the opinion with the Wakabayashi reference. And if you were to make that combination, the combination that they got was not putting the Ackland APS image sensor into the Wakabayashi. They actually broke up what was the Ackland device to stick it into the Wakabayashi structure. Do you want to save some time? Yes. The time is almost up. Perfect. Thank you. Do you want to say what you have left? I'll say what I have left. We'll give you two minutes. Mr. Holwood Greenmeier. May it please the court. This is, we submit a substantial evidence review appeal. The board expressly found, with respect to each of the proposed combinations, that a person of ordinary skill would have been motivated. Would have been motivated is on A195, 215, 222, 230, 286 to 287, and 296. With respect to each of the proposed combinations. When SELECT identifies certain statements that used could have, those were rejecting arguments that SELECT had made that Wakabayashi could not have been a CMOS. It could only have been a CCD. And, of course, in rejecting that argument, the board properly said it could have been either. But, Judge Dyke, as you correctly pointed out, the board went on to explicitly find that Wakabayashi would suggest, to a person of ordinary skill, both CCD and CMOS. With off-chip processing. With off-chip processing. Correct. And one of the failures that SELECT has is in addressing what the board specifically found, with respect to other art that existed at the time. And Mr. Nykerk pointed to SWIFT and Monroe that each explicitly called for, preferably CMOS imagers with off-chip circuitry. And this is SWIFT at pages 1747 to 49 of the appendix. And Monroe at 1782 and 1792 to 94. Monroe specifically calls for putting the processing in a peripheral device. But SELECT simply ignores this. The board had ample evidence to rely on that it was known at the time that CMOS was not exclusively camera-on-a-chip. Of course, many sources, and the ones that SELECT is pointing to, say that it was available, because of CMOS, to make everything on a chip. That was a possibility that CMOS made available. But that did not require, and the board pointed out that Mr. Levy, their expert, never said that CMOS required that it be on a chip. And that only CCD had the processing off-chip. And that would have been inconsistent with the teachings of SWIFT and Monroe. So the board had ample evidence. And when, in the reply brief, SELECT says that the board or Samsung simply ignores Mr. Levy, well, in a substantial evidence review, it's not a question of whether there could have been evidence that could have supported the board finding the other way. They have to show that the evidence that the board did rely on was not substantial. The board credits Mr. Nykerk over Mr. Levy repeatedly in its factual findings. And yet in the reply brief, they cite to Mr. Levy's declaration 40 times. They don't cite to Mr. Nykerk's declaration at all. It's the opposite of what they need to show in a substantial evidence appeal. Unless there are specific questions that the court has, I think we're willing to rely on our briefs. Well, thank you, counsel. One never loses points by surrendering time. Mr. Kaplan, you have two minutes for rebuttal. Thank you, Your Honor. So I want to put on the record a number of, throughout the proceedings below and in the appendix, there are a number of record cites to what a person in the art, or what the board did that Illustrate could have. Appendix 59, 40, 43, 106, 112, 114, 175, 177, 184, 194, 281 to 290, and 288. All examples where the board's reasoning reflects a could-have analysis despite additional language. That's one of them. The Swift and Monroe references, Swift and Monroe in three of the IPRs were not references of record. They were not on instituted grounds. In our papers we made the point it was an improper use of background material in the IPRs, but in the one IPR where Swift is in there, which is the 512 in this appeal, we made the point that a person skilled in the art, again, would understand the Swift reference to have a particular meaning. The Swift reference cites to Dr. Fossum's APS CMOS imager. And even with that expressed cite, the board's position was it doesn't mean what it means. And I want to make the point before my time is out that in this case, we don't have to wonder what a person skilled in the art would understand about what the references mean, in particular the APS CMOS technology and ACLIN, because those scientists wrote and told us exactly what it meant. It was the APS CMOS imagers were integrated on-chip devices. That is not how the board treated them. The board used those references to wind up with deconstructed APS CMOS imagers, which is what Select claims. And as far as the substantial evidence point goes, there is a lot of evidence in the case, but when evidence is applied to the wrong standard it could have, the substantial evidence is not met if the wrong standard is used. I see my time is up. So thank you, Your Honors. Thank you, Mr. Kaplan. The case is submitted.